## ROSS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5103.

Circuit Court of Appeals, Seventh Circuit.

July 13, 1934.

Arthur R. Foss, of Chicago, Ill., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Walter L. Barlow, Sp. Assts. to Atty. Gen., for respondent.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is a petition for review of a decision of the United States Board of Tax Appeals, entered April 4, 1933, disallowing a deduction from income of $109,444.23 for a partially bad debt and finding there was a deficiency of $7,482.47 in the income tax paid by petitioner for the year 1928. The errors relied upon arise out of findings of fact which petitioner contends are contrary to, or without any support in, the evidence; the failure to make material findings of fact in accordance with the undisputed evidence; and the failure to determine the deductibility of the partially bad debt under the law and regulations made for such cases.

Some time prior to 1925, petitioner bought some farm mortgages from one Harry B. Allfree of Newton, Iowa, and paid him $311,750 in cash for them. Later petitioner learned that the securities were substantially all second mortgages and not as had been represented to him. Allfree agreed to repurchase them from him. In settlement he gave his promissory note for $311,750, by the terms of which payments of $10,000 each were to be made on March 1st of the years 1927, 1928, and 1929, the balance on March 1, 1930. As collateral security for the note, petitioner received the entire capital stock of a corporation to be organized for the purchase, holding, and operation of a building known as the Allfree Block in Newton, Iowa, owned by Allfree, subject to a mortgage of $60,000. In addition to this stock, two insurance policies of $25,000 each on the life of Allfree were assigned to petitioner. He still holds the stock mentioned and the assigned policies.

In 1927, the rental income from the Allfree Block was $25,000, which was to be set apart to apply on the interest accruing on the note and the expenses of maintenance and operation of the Allfree Block, including taxes. In November, 1926, petitioner agreed to apply all the income from the property to the principal of the note and waived the interest. Under this arrangement $15,000 was applied on the principal in 1927. However, a modern fireproof office building was erected in Newton in 1926, which caused many of the tenants to leave the Allfree Block, and the value of the building was seriously affected. In 1928 no income was received to apply on the principal of the note.

Allfree had originally agreed to pay off the $60,000 mortgage on the Allfree Block, but failing to do so, he assigned certain mortgages, with a total face value of $98,000, as security for the payment. Only $35,000 was realized on these mortgages, which was used to reduce this indebtedness, leaving a balance unpaid on the mortgage of $25,000 in December, 1928.

During the year 1928, petitioner's attorneys reported to him that Allfree was insolvent, could not pay the installment due on the note, and that litigation would be sending good money after bad. As a result, petitioner took a deduction as a bad debt in the sum of $109,444.23 on the note, valuing the note at that of the collateral and basing it on the cash surrender value of the life insurance policies and a liberal allowance for the building, based on a previous appraisal, with deductions therefrom for depreciation.

A sharply contested point on this appeal is whether there was such conclusive evidence offered as to the insolvency of Allfree in 1928 that the refusal of the Commissioner to allow the deduction made by petitioner amounted to an abuse of the discretion reposed in him under the provisions of section 23 (j) of the Revenue Act of 1928 (26 USCA § 2023 (j), relating to the deduction of debts worthless in part. A part of the evidence on this point consisted in the testimony of petitioner. He said:

"Demands were made on Mr. Allfree in 1928 for payment of the note through my attorneys, Cross & Hammell, and Mr. Hagerman, at which time, after a very close investigation, he was found insolvent, and my attorneys advised it was only sending good money after bad to sue on the note. * * *

" * * * Mr. Allfree said he could not pay the second installment that was due on the note. He said he was insolvent. * * * To determine what the financial ability of Mr. Allfree was, my attorneys in Newton and my secretary met Mr. Allfree in Newton in consultation over the matter in 1928. I received advice from my attorneys regarding Mr. Allfree's condition in 1928. They said that he was entirely insolvent and that there was no chance whatsoever of getting any further settlement from him."

Allfree himself was a witness for petitioner. He testified:

"I did not pay the $10,000 due on the first day of March, 1928. I think there was a demand made on me in the early part of 1928 for the payment of that $10,000. Mr. Hagerman, Mr. Ross' secretary, made that demand, and so did Mr. Cross, his attorney. I was not able to pay anything on the note.

"In the early part of 1928, I was indicted by the Grand Jury of Jasper County, Iowa. At the time that I was indicted, I was the owner of property and assets. Most of that property and those assets were seized by my creditors. I think that my creditors issued an attachment against my property and assets.

"In the early part of 1928, I owned my own home and my business. The value of my home was $40,000 or $50,000 and I had a mortgage on it of $30,000. My other assets in 1928 consisted of my abstract business. That business was seized by my creditors. During the year 1928 I was not able to pay Mr. Ross any money on account of this note.

" * * * The attaching creditors took everything that I had in 1928. During the year 1928, I was stripped of all my property, everything I had."

Other evidence in the record clearly shows that the value of the collateral held by petitioner to secure this note was not in excess of $187,305.77, the value fixed in his income tax return. The two insurance policies had a cash surrender value of $3,081.85. As to the value of the Allfree Block, there was uncontroverted evidence to demonstrate that it was not worth in excess of $115,000 and probably much less. It was also subject to the mortgage of $25,000, leaving a value of $90,000.

George H. Warner, tax appraiser for Jasper county, Iowa, and city assessor for Newton, Iowa, admittedly an expert witness, testified that the total value of the premises, building and land, was around $115,000, rather than the $184,223.92, the value petitioner placed upon them in his return. Allfree testified that the value of the building was only about $100,000. This was the value without deducting the mortgage of $25,000.

By the terms of the note, there having been a default as to one installment due thereon, the entire note was due. It was apparent in 1928 that any recovery would be limited to the value of the collateral, and the evidence definitely and conclusively showed that the value of the building which constituted a part of this security was $115,000 in 1928, subject to a mortgage of $25,000. In other words, the evidence discloses that petitioner, in calculating his losses in the year 1928, considered the building at more than twice its value at that time. It was after making this liberal credit that the taxpayer ascertained his actual loss to be $109,444.23. The taxpayer appropriately adopted the cash surrender value of the two life insurance policies in question as their fair market value in 1928.

It was contended that the life insurance collateral was not finally disposed of for the reason that the taxpayer was still keeping the policies alive with the possibility of the insured dying and permitting recovery of $50,000 additional. In addition to the cash surrender value, the mere right to pay premiums and remain a beneficiary was of little

value. Yet, if the taxpayer was willing to keep the policies alive and, eventually, should a recovery be had upon them, such recovery would necessarily have to be reported as income during the year received. The evidence clearly shows that the petitioner's loss was far in excess of that which he claimed, and the denial of this deduction by the Commissioner amounted to an abuse of the discretion vested in him.

Collateral security to a debt need not be liquidated to establish the worthless portion of the debt. Treasury Regulation 74, Art. 191; Murchison National Bank v. Grissom (C. C. A. 4) 50 F.(2d) 1056, 1058. In that case the court said: .

" * * * The part of the debt that was worthless was definitely ascertainable by the market value of the cotton, and in fact the loss was afterward ascertained to be greater than that claimed at the time of the charging off of a part of the debt, by more than $12,-000. Certainly in fairness and justice to the taxpayer, having in mind the rule as to the construction of statutes of this character, the taxpayer should be allowed to make the deduction. * * *

"Certainly no injustice can result from such a course. Should any unexpected recovery be made by taxpayer of any part of the amount charged off in good faith, such amount so recovered would have to be included by taxpayer in his return for the year in which the recovery is had. * * *

"In the instant case, it not only could have been ascertained but it was ascertained that a part of the debt was worthless, and that part was charged off on the books of the company. A number of the cases relied on turned on the point that the action of the commissioner when doubtful should be sustained, or that the making of the allowance lay within the discretion of the commissioner. Here there is no question that the action of the commissioner in refusing the deduction was clearly wrong."

In the instant case the decision of the Board seems to have been based on the conclusion that no deduction for a portion of a debt is permitted by law until that portion is established as worthless by a closed transaction.

We think this rule more strict and inelastic than the statute warrants. Treasury Regulations 74, promulgated under the Revenue Act of 1928, article 191, permits of a consideration of "all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor

* * *" in determining what is a "bad debt." In the case of United States v. S. S. White Dental Mfg. Co., 274 U. S. 398, 403, 47 S. Ct. 598, 600, 71 L. Ed. 1120, the court said: "It would require a high degree of optimism to discern in the seizure of enemy property by the German government in 1918 more than a remote hope of ultimate salvage from the wreck of the war. The taxing act does not require the taxpayer to be an incorrigible optimist." See, also, Murchison Nat. Bank v. Grissom (C. C. A.) supra, 50 F.(2d) 1056.

An examination of all the evidence convinces us that this debt was worthless in part and had been properly charged off within the taxable year.

Reversed and remanded, with directions to allow petitioner a deduction in the sum of $109,444.23 on his return for the year 1928.